HAWKINS v MURPHY

Docket Nos. 157674, 160160, 160161, 180134. Submitted June 12, 1996, at Grand Rapids. Decided April 11, 1997, at 9:05 A.M.

Kelly M. Hawkins obtained a divorce from Sean M. Murphy in the Jackson Circuit Court, Alexander C. Perlos, J. Hawkins was awarded full custody of a child born to Hawkins before the marriage and whose father was determined in a paternity action to be Murphy, and Murphy was ordered to pay child support and allowed visitation. After Murphy kept the child longer than he was allowed under the judgment of divorce during a visitation period, Hawkins obtained a temporary restraining order from the circuit court prohibiting Murphy from interfering with Hawkins' custody of the child. Murphy unsuccessfully moved for an award of attorney fees and the dissolution of the temporary restraining order. Hawkins, claiming that Murphy is not the father of her child, moved to set aside the order of filiation and to amend the judgment of divorce. The circuit court denied the motion. By stipulation of the parties, the circuit court ordered blood testing for a determination of paternity. When the tests showed that Murphy was not the child's father, the circuit court suspended Murphy's visitation rights and child support obligations. Murphy appealed as of right the orders denying dissolution of the temporary restraining order and attorney fees and appealed by leave granted the order suspending visitation rights and child support obligations. The appeals were consolidated.

The Court of Appeals held:

1. The temporary restraining order, which was granted without notice to Murphy, is not in compliance with MCR 3.310(B)(1)(b), because the plaintiff's attorney failed to certify to the court in writing the reasons supporting why notice should not be required, and MCR 3.310(B)(2)(b), because the temporary restraining order does not state why it was granted without notice. The circuit court abused its discretion by denying the motion to dissolve the temporary restraining order in the absence of any articulated justification for its continuance.

2. The circuit court did not abuse its discretion in denying an award of attorney fees to Murphy. Although attorney fees may be

awarded in a divorce action when the party requesting payment has been forced to incur them as a result of the other party's unreasonable conduct, here even if Hawkins' conduct is deemed unreasonable, Murphy did not have to incur attorney fees inasmuch as he could have accepted pro bono legal assistance.

3. In the absence of evidence on the record indicating that child support obligations under the order of filiation were enforced in addition to support provided for in the divorce judgment, the Court of Appeals cannot consider Murphy's claim that the circuit court erred in refusing to enforce a provision in the divorce judgment by which Hawkins released claims of child support under the order of filiation.

4. The circuit court erred in suspending Murphy's visitation rights and child support obligations. Res judicata and collateral estoppel bar relitigaton of the issue of paternity inasmuch as the parties had a full and fair opportunity to litigate the issue in the paternity and divorce proceedings and the order of filiation and judgment of divorce were final judgments and are conclusive with respect to the issue of paternity. Even if res judicata and collateral estoppel do not apply, there is ample evidence in the record to support a finding that Murphy is an "equitable" parent of the child. Murphy considers the child to be his, was actively involved in the child's life from birth, desires rights afforded to parents, and appears willing to pay child support, and Hawkins had encouraged the development of a father-son relationship between Murphy and the child. The circuit court failed to consider the child's best interest when suspending visitation and child support. The child's best interest is the overriding concern in any custody determination. The case must be remanded for an evidentiary hearing before a different judge to determine visitation and support in light of the child's best interest.

Orders vacated; case remanded.

*Ronald J. Fabian*, for Kelly M. Hawkins.

Sean M. Murphy, in propria persona.

Before: MARILYN KELLY, P.J., and NEFF and J. STEMPIEN* , JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Defendant appeals as of right from orders dated October 9, 1992 and December 19, 1992, and by leave granted from an order dated October 9, 1994. The appeals were consolidated. All three orders arose from the parties' ongoing post-divorce visitation dispute. We vacate the 1992 temporary restraining order (TRO) and the 1994 order suspending defendant's visitation and support, and remand for an evidentiary hearing to determine support and visitation based on the best interests of the child, Patrick Murphy.

I

The child was born on October 20, 1989. The parties were not married then and, pursuant to plaintiff's paternity complaint, an order of filiation was entered naming defendant as Patrick's father and ordering him to pay child support. The parties were married on September 18, 1990, but four months later plaintiff filed for divorce. A consent judgment of divorce was entered January 27, 1992, giving full custody of Patrick to plaintiff, but allowing defendant very liberal visitation, including four weeks during the summer and one week at Christmas and Easter.

In August, 1992, defendant kept Patrick after a weekend visit for one of the summer weeks of visitation to which he was entitled. He had repeatedly attempted to notify plaintiff without success of his intent to keep Patrick for the week. He also advised the Friend of the Court of his intentions and was informed that he could exercise a week of visitation. Plaintiff moved for a TRO against defendant, which was issued August 19, 1992, and filed parental kidnapping charges against him, which were later dismissed.

Following a hearing at which plaintiff was required to show cause as to why she had not allowed defendant the visitation provided for in the judgment of divorce, the court issued an order on October 9, 1992, allowing defendant to exercise the three weeks of summer visitation he had been denied. However, it continued the August 19, 1992 restraining order, which prohibited defendant from interfering with plaintiff's physical possession of Patrick.

On October 9, 1992, another hearing was held with respect to several motions filed by defendant. Defendant sought dissolution of the TRO, and moved that plaintiff be required to pay his future attorney fees as his attorney had withdrawn from the case due to his inability to pay. In orders entered on December 18, 1992, the court denied defendant's motions.

On April 23, 1993, a hearing was held on plaintiff's motion to set aside the order of filiation and amend the judgment of divorce regarding defendant's paternity. Plaintiff claimed that defendant was not Patrick's father and that she married him only because he had threatened her. The motion was denied.

On June 11, 1993, defendant brought a motion for blood tests to determine Patrick's paternity. By stipulation of the parties, an order was entered for blood tests on July 30, 1993. On September 15, 1993, the results of the DNA blood analysis revealed that defendant was not Patrick's father. The court, in an order entered on October 19, 1994, suspended defendant's visitation rights and support obligations.[1]

---

[1] There is no explanation in the record why the order was not entered until almost a year after the court's decision.

II

Defendant's first claim on appeal is that the issuance of the TRO on August 19, 1992, was improper and that he was denied due process. We need not reach the constitutional issue, because we find that the TRO as issued did not comply with the requirements of MCR 3.310(B)(1).

MCR 3.310(B)(1) provides:

> (1) A temporary restraining order may be granted without written or oral notice to the adverse party or the adverse party's attorney only if
>
> (a) it clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant from the delay required to effect notice or from the risk that notice will itself precipitate adverse action before an order can be issued;
>
> (b) the applicant's attorney certifies to the court in writing the efforts, if any, that have been made to give the notice and the reasons supporting the claim that notice should not be required; and
>
> (c) a permanent record or memorandum is made of any nonwritten evidence, argument, or other representations made in support of the application.

Here, the record reveals that plaintiff's attorney failed to certify to the court in writing the reasons supporting the claim that notice should not be required. Nor did the TRO state on its face the reason why it was granted without notice, as required by MCR 3.310(B)(2)(b). Because the requirements of the court rule were not complied with, the order was improperly granted. *Acorn Building Components, Inc v UAW Local 2194*, 164 Mich App 358, 364; 416 NW2d 442 (1987).

In addition, the trial court's order denying defendant's motion to dissolve the TRO was arbitrary. At the hearing on defendant's motion, the court did not state the reason why it found continuation of the TRO necessary. The parental kidnapping charges had been dismissed and no evidence was introduced to demonstrate that defendant ever intended to interfere with plaintiff's possession of Patrick. The court abused its discretion by denying defendant's motion to dissolve the order in the absence of any articulated justification. We need not address defendant's claim that the continuation of the TRO effectively modified visitation, because the issue was not raised below.

III

Defendant's next claim of error is that the trial court abused its discretion in denying his motion for attorney fees. We will not reverse the trial court's decision to award or deny attorney fees in a divorce action absent an abuse of discretion. *Heike v Heike*, 198 Mich App 289, 294; 497 NW2d 220 (1993).

A court may award a party in a divorce action "any sums necessary to enable the . . . party to carry on or defend the action, during its pendency." MCL 552.13(1); MSA 25.93(1). An award of legal fees in a divorce action is authorized when it is necessary to enable the party to carry on or defend the suit. MCR 3.206(C)(2); *Maake v Maake*, 200 Mich App 184, 189; 503 NW2d 664 (1993). They may also be awarded when the party requesting payment has been forced to incur them as a result of the other party's unreasonable conduct in the course of the litigation. *Stackhouse v Stackhouse*, 193 Mich App 437, 445; 484 NW2d 723 (1992).

At the time of defendant's motion, both parties were students. Plaintiff was receiving Aid to Families with Dependent Children. Defendant had been offered pro bono representation and had expressly rejected it at the show cause hearing on August 14, 1992. Although defendant contends that plaintiff concealed assets and income, no evidence was produced to support such allegations. Moreover, because defendant could have accepted pro bono legal assistance, even if plaintiff's actions could be characterized as unreasonable, they could not have resulted in the incurrence of attorney fees by defendant. Under these circumstances, a denial of attorney fees cannot be characterized as an abuse of discretion. *Maake, supra.*[2]

IV

Defendant next contends that the trial court erred when it refused to enforce the release of claims provision in the judgment of divorce. Plaintiff had released defendant from her claim to child support under the order of filiation. We find no evidence in the lower court record demonstrating that the support obligations under the order of filiation were enforced in addition to the support provided for in the judgment of divorce. This Court's review is limited to the record on appeal; we will not consider allegations not supported by the record presented. *Band v Livonia Associates*, 176 Mich App 95, 103-104; 439 NW2d 285 (1989).

---

[2] Defendant's reliance on *Cooper v Cooper*, 93 Mich App 220; 285 NW2d 819 (1979), is misplaced in that he cites the dissent in that case with regard to the issue of attorney fees.

V

With respect to the issues of paternity and visitation, we find that reversal is required in this case, because the trial court committed clear legal error when it failed to consider the res judicata effect of the order of filiation and judgment of divorce. Moreover the court failed to consider the best interests of the child before suspending defendant's visitation and support. MCL 722.27a; MSA 25.312(7a).

The trial court should not have permitted the issue of paternity to be raised when the parties had had a full and fair opportunity to litigate the issue in the paternity and divorce proceedings. Under the broad application of res judicata which Michigan courts employ, the parties cannot raise the issue of paternity if it has already been conclusively determined in a prior adjudication. *Hackley v Hackley*, 426 Mich 582, 585 (BOYLE, J.), 599 (BRICKLEY, J.); 395 NW2d 906 (1986).

In this case, the court specifically adjudged defendant to be Patrick's father through an order of filiation entered in a paternity action. The parties' judgment of divorce referred to Patrick as their child and established defendant's duty of support. Plaintiff brought motions in April of 1993 to vacate the order of filiation and amend the judgment of divorce before the trial court, both of which were denied; no appeal was taken. Consequently, there can be no dispute that the order of filiation and the judgment of divorce are final judgments entitled to preclusive effect under the doctrine of res judicata.

Furthermore, the issue of paternity is barred by the doctrine of collateral estoppel. *Hackley, supra* at 590-591 (BOYLE, J.). Collateral estoppel precludes relitiga-

tion of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment, and the issue was actually and necessarily litigated. *Porter v Royal Oak*, 214 Mich App 478, 485; 542 NW2d 905 (1995).

The current proceeding to determine paternity involves the same parties and the same issue as in the prior proceedings. Because the issue of paternity was already adjudicated, issue preclusion applies and bars the parties from relitigating the issue. *Hackley, supra* at 591.

The fact that the parties in this case stipulated to the blood tests does not compel a different result. As this Court stated in *Johns v Johns*, 178 Mich App 101, 105-106; 443 NW2d 446 (1989):

> [T]o sanction the practice, during a custody battle, of allowing parents to agree on a disclaimer of parenthood either to obtain custody or avoid child support, would be tantamount to engaging in a practice contrary to the welfare of the children of this state.
>
> *            *            *
>
> . . . Therefore, we believe it to be against the public policy of this state for a parent, whether natural or equitable, to suddenly disclaim parenthood by stipulation during a custody battle.

Thus, even if both parties stipulated to blood tests which showed that one is not the parent of the child, as they did in this case, that fact is insufficient to overcome the prior ruling. Michigan law is clear that a party cannot disclaim parenthood at this point. See *Hackley, supra* at 597-599; *Nygard v Nygard*, 156 Mich App 94, 99; 401 NW2d 323 (1986); *Johnson v*

*Johnson*, 93 Mich App 415, 419-420; 286 NW2d 886 (1979).

Even if res judicata and collateral estoppel did not apply in this case, there is ample evidence in the record to support a finding that defendant is Patrick's "equitable" parent. *Atkinson v Atkinson*, 160 Mich App 601, 608-609; 408 NW2d 516 (1987). Under the doctrine of equitable parent established in *Atkinson*, a husband who is not the biological father of a child born or conceived during the marriage may be considered the natural father of the child where (1) the husband and the child mutually acknowledge a relationship as father and child, or the mother of the child has cooperated in the development of such a relationship over a period of time before the filing of the complaint for divorce, (2) the husband desires to have the rights afforded to a parent, and (3) the husband is willing to take on the responsibility of paying child support. *Id.* at 608-609.

Even though Patrick was not born during the marriage, that fact should not preclude a finding that defendant was Patrick's equitable parent. Defendant considers Patrick to be his son and, before the court suspended his visitation, had been actively involved in Patrick's life since birth. Defendant obviously desires to exercise the rights afforded to a parent, as demonstrated by his repeated efforts to enforce the liberal visitation provisions of the judgment of divorce. Moreover, plaintiff encouraged the development of a father-son relationship by filing a paternity action naming defendant as Patrick's father. Both parties agreed to the order of filiation. Although defendant has not been able to pay much in child support due to his financial status, he appears willing to pay

child support for Patrick, especially after defendant finishes his formal education.

We find that the trial judge also erred in suspending defendant's visitation and support without determining Patrick's best interests. Rather, it appears that the trial court based its decision solely upon the blood test results and the parties' acrimonious history. The best interest of the child is the overriding concern of any custody determination. *Aktinson, supra* at 611. Therefore, we find that the order suspending defendant's visitation rights was in error.

The lower court's orders appealed from are vacated, and the case is remanded for an evidentiary hearing to determine visitation and support in light of Patrick's best interests. In view of the substantial prejudice to defendant that has resulted from these rulings, pursuant to this Court's authority under MCR 7.216(A)(7), the case should be reassigned to a different judge on remand.